972 So.2d 340 (2007)
Andrea BONNETTE, Individually and as Natural Tutor of Her Minor Child, Hannah Grace Bonnette
v.
STATE of Louisiana, Louisiana State University Health Sciences Center  New Orleans, Medical Center of Louisiana at New Orleans a/k/a MCLNO and Board of Supervisors of Louisiana State University and Agricultural and Mechanical College.
No. 2006-CA-1339.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 2007.
*341 Kara M. Hadican, Michael J. Ecuyer, Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC, New Orleans, LA, for Plaintiff/Appellant.
Charles C. Foti, Jr., Attorney General, J. Marc Vezina, Special Assistant Attorney General, Kelli M. Khalaf, Special Assistant Attorney General, Andrea C. Caplan, Special Assistant Attorney General, Vezina and Gattuso, L.L.C., Gretna, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
On April 3, 2004, Matthew Bonnette was involved in an automobile collision on the Crescent City Connection (CCC) Bridge in New Orleans; he was arrested in connection with the incident. The CCC police transported him to the Medical Center of Louisiana New Orleans' (MCLNO) emergency room, where he was diagnosed with muscle strains to his back and suicidal ideation.
The emergency room physicians ordered a psychiatric evaluation. During the evaluation Mr. Bonnette informed the doctors that for approximately a month he had experienced a decrease in sleep and appetite along with drastic weight loss. He discussed hanging himself and disclosed that on two prior occasions he had attempted suicide.
The doctors diagnosed him as suffering from a major depressive episode. A Suicide Risk Assessment and Treatment plan assessed Mr. Bonnette with numerous specific risk factors including but not limited to psychic distress, global insomnia and past suicide attempts . . . constituting an emergency medical condition. An antidepressant was prescribed and he was released to the New Orleans Police Department (NOPD) who was notified to place Mr. Bonnette on suicide watch while in their custody and to have him reevaluated on release. Mr. Bonnette was transferred to the custody of the Orleans Parish Criminal Sheriff's office where he was placed in a cell at the House of Detention. A leather restraint strap was left in the cell and Mr. Bonnette committed suicide by hanging.[1]
Mr. Bonnette's family filed suit, claiming that MCLNO committed malpractice and violated 42 U.S.C.A. § 1395dd, the Emergency Medical Treatment and Active Labor Act (EMTALA), by "dumping" Mr. Bonnette without proper treatment. The trial court granted defendant's exception of prematurity as to the malpractice claim and also granted a peremptory exception of no cause of action regarding plaintiffs' claim under EMTALA, dismissing that claim with prejudice. The plaintiffs appeal the dismissal of the EMTALA claim.
*342 On appeal, this Court conducts a de novo review of the trial court's ruling sustaining an exception of no cause of action. City of New Orleans v. Board of Commissioners of Orleans Levee Dist., 93-0690, pp. 47-49 (La.7/5/1994), 640 So.2d 237, 253. When determining whether to sustain an exception of no cause of action, the trial court is confined to the four corners of the petition. See Doe v. Jo Ellen Smith Medical Foundation d/b/a Jo Ellen Smith Medical Center and Jo Ellen Smith Psychiatric Center, XXXX-XXXX (La.App. 4 Cir. 7/13/05), 913 So.2d 140; Z.U. Azhar Clinic v. Rafiq, XXXX-XXXX (La.App. 4 Cir. 7/6/05), 913 So.2d 135. The facts pled in the petition must be considered true for purposes of deciding whether the law provides a remedy for the plaintiff if the facts are proven at trial. Bibbins v. City of New Orleans, XXXX-XXXX (La.App. 4 Cir. 5/21/03), 848 So.2d 686. Furthermore, no evidence may be introduced at any time to support or controvert the exception of no cause of action. La.Code Civ. Proc. art. 931.
Plaintiffs argue that the physicians at MCLNO violated subsection (b) of the EMTALA statute by transferring the patient to the NOPD without properly stabilizing him. Congress enacted EMTALA as a way to prevent private hospitals from "dumping" patients by refusing to provide services to uninsured or indigent persons who presented themselves for emergency treatment. Spradlin v. AcadiaSt. Landry Medical Foundation, 98-1977 (La.2/29/00), 758 So.2d 116, 121. 42 U.S.C.A. § 1395dd reads in pertinent part:
(b) Necessary stabilizing treatment for emergency medical conditions and labor
(1) In general If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either
(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.
* * *
(2) Appropriate transfer
An appropriate transfer to a medical facility is a transfer
(A) in which the transferring hospital provides the medical treatment within its capacity which minimizes the risks to the individual's health . . . ;
(B) in which the receiving facility
(i) has available space and qualified personnel for the treatment of the individual, and
(ii) has agreed to accept transfer of the individual and to provide appropriate medical treatment;
The Plaintiffs' petition alleges that MCLNO: (1) failed to properly stabilize Mr. Bonnette's medical condition; and (2) improperly transferred Mr. Bonnette to the custody of the NOPD. MCLNO argues that as a State agency it is protected from suit under EMTALA by sovereign immunity. Alternatively, if sovereign immunity does not apply, any tort claim against MCLNO is limited to the Louisiana Medical Malpractice Act. Additionally, EMTALA does not apply to a State run hospital whose purpose it is to treat indigent patients.
First, we must determine if the State Constitution precludes the plaintiffs from asserting an EMTALA cause of action against a State agency. Article XII, § 10(A) of the constitution states:

*343 (A) No immunity in contract and tort. Neither the state, a state agency, nor a political subdivision should be immune from suit and liability in contract or for injury to person or property.
The plaintiffs' EMTALA claim clearly sounds in tort. Thus, the State has waived its immunity. Further, the Louisiana Supreme Court has found that even though medical malpractice claims and "dumping" claims may overlap, the federal cause of action arising from EMTALA is separate and distinct from a state malpractice cause of action. Spradlin, 758 So.2d at 121.
Next, MCLNO cites Collins v. State of Louisiana, Health Care Authority, 99-2308 (La.App. 4 Cir. 7/12/00), 774 So.2d 167 and Boudreaux v. State, 687 So.2d 596 (La.App. 4 Cir. 1/14/97) for the proposition that an EMTALA claim cannot be asserted against the State Charity System.
In Boudreaux, the trial court dismissed the EMTALA claim on motion for partial summary judgment. This court, denied the plaintiff's writ finding the plaintiff did not have proof that the failure to diagnose was based on her indigent status and partial summary judgment was appropriate since EMTALA gives a separate cause of action from state medical malpractice claim. Id.
In Collins, a jury awarded damages to plaintiff in amount of $938,000, the district court judge reduced the award to $500,000. This court affirmed the lower court's finding that the plaintiff did not prove the EMTALA claims. Therefore, the damage award for violating the EMTALA statute was duplicative to the medical malpractice claims of wrongful death and survival action, so a reduction in the award to the medical malpractice cap was warranted. Collins, supra.
Although the evidence in both of the above cited cases was insufficient to support an EMTALA claim against the State Charity System, this circuit did not bar or prohibit such a claim from being asserted. This Court did make mention of the "nonsensical" nature of pursuing a "dumping" claim based on indigence against a system designed to treat the indigent. However, that was not the determining factor of why the EMTALA claim failed. The failure of the claim was solely based on a lack of evidence in support of the allegations. In the instant case we are faced with a patient that was allegedly "dumped" based on his status as a prisoner. The Supreme Court in Spradlin discussed the intent of Congress in enacting EMTALA stating:
[w]hile the concern was narrow, Congress did not narrowly tailor the scope of persons protected by EMTALA. Congress did not limit EMTALA's scope to indigents or uninsureds; rather, Congress broadly defined the class of plaintiffs as any "individual who presented himself or herself at a covered hospital's emergency department.
Accordingly, this Court finds that Louisiana recognizes EMTALA as a valid cause of action. Furthermore, there is nothing prohibiting such a claim against MCLNO. Therefore, the trial court's dismissal of the EMTALA claim in reversed and the case is remanded for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Based on the briefs filed in the record, these facts appear to be undisputed.